**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SEMCON IP INC.,<br><br>    *Plaintiff*,<br><br>v.<br><br>ASUSTEK COMPUTER, INC., ET AL.,<br><br>    *Defendants*. | Case No. 2:18-cv-00193-JRG<br>(Lead Case) |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

Before the Court is the opening claim construction brief of Semcon IP Inc. ("Plaintiff") (Dkt. No. 58, filed on May 8, 2019),[1] the response of Capri Holdings Ltd., Michael Kors (USA), Inc., Michael Kors Retail, Inc., and ASUSTeK Computer Inc. (collectively "Defendants") (Dkt. No. 61, filed on May 21, 2019), and Plaintiff's reply (Dkt. No. 63, filed on May 29, 2019). The Court held a hearing on claim construction on June 20, 2019. Having considered the arguments and evidence presented by the parties at the hearing and in their briefing, the Court issues this Order.

---

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. No.) and pin cites are to the page numbers assigned through ECF.

**Table of Contents**

I.     BACKGROUND .................................................................................................... **3**

II.    LEGAL PRINCIPLES ....................................................................................... **4**

    A.    Claim Construction ................................................................................ 4

    B.    Departing from the Ordinary Meaning of a Claim Term ......................... 7

    C.    Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA) ................... 8

III.   AGREED CONSTRUCTIONS ....................................................................... **9**

IV.   CONSTRUCTION OF DISPUTED TERMS ............................................... **11**

    A.    "computer processor," "processor," "processing unit," "processing device" ....... 11

    B.    "reducing a magnitude of a difference" and "reducing the magnitude of the difference" .................................................................................... 17

    C.    "a counter" ......................................................................................... 20

    D.    The Changing-the-Voltage-While-Executing-Instructions Terms ........ 21

V.    CONCLUSION ................................................................................................ **22**

# I.    BACKGROUND

Plaintiff alleges infringement of four U.S. Patents: No. 7,100,061 (the "'061 Patent"), No. 7,596,708 (the "'708 Patent"), No. 8,566,627 (the "'627 Patent"), and No. 8,806,247 (the "'247 Patent") (collectively, the "Asserted Patents"). These patents are related through a series of continuation applications and all ultimately claim priority to the application that issued as the '061 Patent, which was filed on January 18, 2000. The '061 Patent was subject to an inter partes reexamination requested on June 13, 2007 and from which a certificate issued on August 4, 2009.

The Court previously construed terms of the Asserted Patents in *Semcon IP Inc. v. Huawei Device USA Inc. et al.,* No. 2:16-cv-00437-JRG-RSP, 2017 U.S. Dist. LEXIS 108040 (E.D. Tex. July 12, 2017) ("*Huawei*") and in *Semcon IP Inc. v. Amazon.com, Inc.*, No. 2:18-cv-00192-JRG, 2019 U.S. Dist. LEXIS 79846 (E.D. Tex. May 13, 2019) ("*Amazon.com*"). All the terms now before the Court were construed in *Huawei* or *Amazon.com*.

The Asserted Patents are generally directed to technology for managing a computer system's power consumption by dynamically adjusting the processor's operating frequency and voltage.

The abstracts of the Asserted Patents are identical and provide as follows:

> A method for controlling the power used by a computer including the steps of measuring the operating characteristics of a central processor of the computer, determining when the operating characteristics of the central processor are significantly different than required by the operations being conducted, and changing the operating characteristics of the central processor to a level commensurate with the operations being conducted.

Claims 1 and 17 of the '247 Patent, exemplary method and system claims respectively, provide:

> **1.** A method, comprising:
> determining a level of permitted power consumption by a processing device from a set of operating conditions of the processing device, with the determining the level of permitted power consumption not based upon instructions to be executed by the processing device;

determining a highest allowable frequency of operation of the processing device that would result in power consumption not exceeding the level of permitted power consumption;

determining a lowest allowable level of voltage to apply to the processing device that would allow execution of the instructions by the processing device at the highest allowable frequency; and

changing power consumption of the processing device during execution of the instructions by reducing a magnitude of a difference between an operating frequency of the processing device and the highest allowable frequency of operation of the processing device and reducing a magnitude of a difference between a voltage applied to the processing device and the lowest allowable level of voltage.

**17.** An apparatus, comprising:

a frequency generator configured to generate a first clock signal at a first frequency; and

a processing device configured to receive the first clock signal and a first voltage provided by a voltage source, the processing device operable to monitor operating parameters of the processing device, the processing device operable to determine a second frequency of the first clock signal and a second voltage for operation of the processing device at lower power than operation at the first frequency and the first voltage, with the processing device operable to determine the second frequency and the second voltage not based on instructions to be executed by the processing device, the processing device operable to control the frequency generator to change from generating the first clock signal at the first frequency to generating the first clock signal at a second frequency, and the processing device operable to control the voltage source to change from providing the first voltage to providing the second voltage during execution of the instructions by the processing device.

## II.    LEGAL PRINCIPLES

### A.    Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d

1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry … begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v.*

*Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or

may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id*. Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*. The Supreme Court has explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

## B.    Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[2] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning

---

[2] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### C. Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)[3]

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 911. As it is a challenge to the validity of a patent, the failure of any claim in suit to

---

[3] The Court refers to the pre-AIA version of § 112 but understands that there is no substantial difference between definiteness under the pre-AIA version and under the AIA version of the statute.

comply with § 112 must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1365 (Fed. Cir. 2017). "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Likewise, when a subjective term is used in a claim, "the court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005). The standard "must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

## III.    AGREED CONSTRUCTIONS

The parties have agreed to the following constructions set forth in their Joint Claim Construction Chart (Dkt. No. 64).

| Term[4] | Agreed Construction |
|---|---|
| "idle time"<br><br>• '061 Patent Claim 23 | time spent in an idle state |
| "halt state"<br><br>• '061 Patent Claims 32, 33, 45, 47, 50, 52 | state in which the core clock has been stopped but the processor responds to most interrupts |
| "a power supply furnishing selectable output voltages"<br><br>• '061 Patent Claim 56 | a power supply providing one of a plurality of distinct voltage levels corresponding to an input |

---

[4] For all term charts in this order, the claims in which the term is found are listed with the term but: (1) only the highest-level claim in each dependency chain is listed, and (2) only asserted claims identified in the parties' Joint Claim Construction Chart (Dkt. No. 64) are listed.

| Term[4] | Agreed Construction |
|---|---|
| "power supply … configured to furnish a selectable voltage"<br><br>• '627 Patent Claim 5 | a power supply configured to provide one of a plurality of distinct voltage levels specified by an input |
| "idle state(s)" / "idle states of said computer processor" / "plurality of idle states of said computer processor"<br><br>• '061 Patent Claims 28, 30, 44 | state in which various components of the system are quiescent |
| "a selectable voltage"<br><br>• '627 Patent Claims 5, 25 | one of a plurality of distinct voltage levels specified by an input |
| "voltage source includes a programmable voltage supply"<br><br>• '247 Patent Claims 16, 23[5] | voltage source includes a power supply configured to provide one of a plurality of distinct voltage levels specified by an input |
| "sleep state"<br><br>• '061 Patent Claims 31, 46, 51 | plain and ordinary meaning |
| "determining an allowable reduced power consumption level" / "determining a level of permitted power consumption"<br><br>• '061 Patent Claim 39<br>• '247 Patent Claim 1 | plain and ordinary meaning |
| "causing a change in [its/the] voltage / change[s] [a voltage supplied to the processing device from] the first [operating] voltage to [the/a] second [operating] voltage / causing the voltage at which said computer processor is operated to change / control the voltage source to change from providing the first voltage to providing the second voltage / [changing/change/changes] [a/the/the operating/a level of] voltage"<br><br>• '061 Patent Claims 1, 15, 23, 30, 39<br>• '708 Patent Claims 7, 36, 51, 55, 60<br>• '247 Patent Claims 1, 10, 17 | plain and ordinary meaning |

---

[5] The parties also identify Claim 5 of the '247 Patent. Dkt. No. 64-1 at 4 (term 7). Claim 5 does not recite "voltage source includes a programmable voltage supply" though it does recite "controlling a programmable voltage supply."

Having reviewed the intrinsic and extrinsic evidence of record, the Court hereby adopts the

parties' agreed constructions.

## IV.     CONSTRUCTION OF DISPUTED TERMS

### A.     "computer processor," "processor," "processing unit," "processing device"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "computer processor"<br><br>• '061 Patent Claims 1, 15, 23, 30, 39 | CPU | CPU, which does not include the operating system |
| "processor"<br><br>• '061 Patent Claims 8, 10, 11, 56[6]<br>• '708 Patent Claims 1, 7, 20, 23, 26, 33,36, 39, 51, 55, 59 | CPU | CPU, which does not include the operating system |
| "processing unit"<br><br>• '061 Patent Claims 8, 11, 56<br>• '708 Patent Claims 20, 23, 26, 33, 36, 39, 55, 59<br>• '627 Patent Claims 1, 10, 16, 23<br>• '247 Patent Claims 1, 10, 17 | computing portion of CPU | computing portion of CPU, which does not include the operating system |
| "processing device"<br><br>• '247 Patent Claims 1, 10, 17 | computing portion of CPU | computing portion of CPU, which does not include the operating system |

Because the parties' arguments and proposed constructions with respect to these terms are

related, the Court addresses the terms together.

---

[6] Independent Claims 8, 10, 11, and 56 of the '061 Patent include the term "central processor." Though all these claims were listed in the parties P.R. 4-5(d) chart, no claim language was provided with the disputed terms in bold type, as required by P.R. 4-5(d). The Court understands that the parties' arguments and proposed constructions of "processor" and "computer processor" apply to "central processor."

<u>**The Parties' Positions**</u>

Plaintiff submits: The Court should construe these terms as they were construed in *Huawei*.[7] As held in Huawei, any disclaimer of an operating system was rescinded during prosecution of the '061 Patent. Specifically, and as held in *Huawei*, the patentee acquiesced to the patent-examiner's position that the pending claims did not distinguish a processor with an operating system from one without an operating system by abandoning the argued distinction and instead amending the claims to include "executing instructions while changing voltage." This acquiescence was reiterated in reexamination of the '061 Patent. Dkt. No. 58 at 9–12.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '061 Patent File Wrapper July 7, 2003 Amendment and Response at 19 (Plaintiff's Ex. I, Dkt. No. 58-10 at 21), September 9, 2003 Office Action at 2 (Plaintiff's Ex. L, Dkt. No. 58-13 at 4), February 13, 2004 Amendment and Response at 15 (Plaintiff's Ex. J, Dkt. No. 58-11 at 16), April 27, 2004 Office Action at 2 (Plaintiff's Ex. H, Dkt. No. 58-9 at 4), July 16, 2004 Examiner Interview Summary (Plaintiff's Ex. M, Dkt. No. 58-14), August 30, 2007 Reply in Inter Partes Reexamination at 49 n.6 (Plaintiff's Ex. N, Dkt. No. 58-15 at 50); U.S. Patent No. 5,812,860 ("*Horden*"), at [57] Abstract, fig.1, col.3 ll.9–12 (Plaintiff's Ex. K, Dkt. No. 58-12). **Extrinsic evidence**: Nazarian Decl.[8] ¶ 32 (Plaintiff's Ex. G, Dkt. No. 58-8).

Defendants respond: As held in *Huawei*, the patentee disclaimed "operating system" from the claimed processor functionality during prosecution of the '061 Patent. This disclaimer was never rescinded during prosecution and thus the claims must be interpreted to give effect to the

---

[7] *Huawei*, 2017 U.S. Dist. LEXIS 108040, at *17–26.
[8] Declaration of Shahin Nazarian, Ph.D., In Support of Defendants' Responsive Claim Construction Brief, *Semcon IP Inc. v. Huawei Devices USA Inc. et al*.

disclaimer. The Court erred in *Huawei* in holding the patentee rescinded the disclaimer through acquiescence. Specifically, the patentee did not expressly or otherwise affirmatively acquiesce to the examiner's position. And even though the examiner did not rely on the patentee's operating-system disclaimer, the disclaimer is part of the public record and there is not a clear rescission of that disclaimer in that record. Accordingly, the public is entitled to rely on the disclaimer and the patentee should be bound by the disclaimer. Dkt. No. 61 at 6–17.

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '061 Patent col.1 l.67 – col.2 l.1; '061 Patent File Wrapper July 7, 2003 Amendment and Response at 19–20 (Defendants' Ex. C, Dkt. No. 61-3 at 20–21), February 13, 2004 Amendment and Response at 2, 15–16, 23 (Defendants' Ex. B, Dkt. No. 61-2 at 3, 16–17, 24), August 30, 2007 Reply in Inter Partes Reexamination at 48 (Defendants' Ex. E, Dkt. No. 61-5 at 49); *Horden* at col.5 ll.22–42. **Extrinsic evidence**: Nazarian Decl. ¶¶ 30–35 (Defendants' Ex. D, Dkt. No. 61-4).

Plaintiff replies: To effect rescission of a disclaimer of claim scope, acquiescence to an examiner's position does not require a written expression of agreement with the examiner. Here, in response to the Examiner's position that the pending processor claim language did not exclude an operating system the patentee amended the claims to add an entirely different limitation rather than to expressly exclude an operating system—signaling its acquiescence to the examiner's position. Dkt. No. 63 at 4–7.

### <u>Analysis</u>

The issue in dispute distills to whether the patentee rescinded its prosecution-history disclaimer of an operating system. It did.

This is substantially the same issue before the Court in *Huawei*. 2017 U.S. Dist. LEXIS 108040, at *17–26. The Court reiterates the *Huawei* ruling and reasoning and rejects Defendants' proposed construction. It is meaningful that the examiner stated that "the claim language does not require the processor determining to be performed without regards to the operating system, i.e. via processor hardware only" and the patentee did not amend the claims to address the examiner's statement but rather added an entirely different limitation. '061 Patent File Wrapper April 27, 2004 Office Action at 2, Dkt. No. 58-9 at 4; '061 Patent File Wrapper July 16, 2004 Interview Summary, Dkt. No. 58-14 at 3; *Huawei*, 2017 U.S. Dist. LEXIS 108040, at *25–26. As there was nothing for the examiner to revisit, the patentee's acquiescence was necessarily "sufficiently clear to inform the examiner that the previous disclaimer, and the prior art that it was made to avoid, may need to be re-visited." *Hakim v. Cannon Avent Grp.*, 479 F.3d 1313, 1318 (Fed. Cir. 2007).

Acquiescence to an examiner's position does not require a formal and express statement, as Defendants contend. *Springs Window Fashions LP v. Novo Indus., L.P.* distinguishes a patentee's retraction of statements it made from acquiescence to an examiner's position that is contrary to the patentee's position. 323 F.3d 989, 995 (Fed. Cir. 2003) (finding no rescission of disclaimer when the patentee "never retracted any of his statements distinguishing [the prior art] nor did he acquiesce in the examiner's comments regarding the overlapping scope of [the prior art]"). Consistent with the ordinary meanings of "retract"[9] and "acquiesce,"[10] the Federal Circuit's

---

[9] As relevant here, Merriam-Webster online defines "retract" as "to recant or disavow something," https://www.merriam-webster.com/dictionary/retract. *See also*, *Black's Law Dictionary* 1342 (8th ed. 2004) (defining "retraction" as "[t]he act of taking or drawing back" and "[t]he act of recanting; a statement of recantation").

[10] As relevant here, Merriam-Webster online defines "acquiesce" as "to accept, comply, or submit tacitly or passively," https://www.merriam-webster.com/dictionary/acquiesce. *See also Webster's New International Dictionary* 23 (2d ed. 1944) (defining "acquiesce" as "accept or comply tacitly of passively, without implying assent or agreement"); *Black's Law Dictionary* 24–25 (defining "acquiesce" as "[t]o accept tacitly or passively; to give implied consent to (an act)" and "acquiescence" as "[a] person's tacit or passive acceptance; implied consent to an act"). The tacit or passive nature of acquiescence has repeatedly been recognized in courts throughout the country in a variety of contexts. *See, e.g.*, *Piagentini v. Ford Motor Co.*, 901 N.E.2d 986, 995–97 (Ill. App. Ct. 2009) ("According to Black's Law Dictionary, to acquiesce is '[t]o accept tacitly or passively; to give implied consent to (an act).' Black's Law Dictionary (8th ed.

distinction suggests retraction of a position would require the expression suggested by Defendants whereas acquiescence to a contrary position may be signaled by acceptance without protest. The patentee in *Springs Window* did not comply with the examiner's position without protest, but rather expressly protested, stating in addition to other patentability grounds, it "maintains the arguments set forth in the prior Amendment concerning distinguishing of [the prior art] from the claims previously presented, on the merits." *Id.* at 994. That is, the *Springs Window* patentee did not acquiesce; instead, it protested. The patentee here reacted to the examiner's position in a significantly different fashion. Instead of protesting the examiner's position, it amended the claims to distinguish them from the *Horden* reference on other grounds. *See, e.g.*, '061 Patent File Wrapper July 16, 2004 Interview Summary, Dkt. No. 58-14 at 3; *Huawei*, 2017 U.S. Dist. LEXIS 108040, at *25–26.

Defendants also cite *Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325 (Fed. Cir. 1998) as explicitly rejecting the efficacy of a tacit or passive rescission of a prosecution-history disclaimer, but *Desper* does not stand for the rule Defendants propose. Rather, *Desper* addressed a claim-scope argument that was explicitly accepted by the examiner. *Id.* at 1333–34. Specifically, in response to a rejection over a British patent, the *Desper* patentee amended the claims, argued the amended claims included a "limitation that the channel signals be maintained separate and apart," and contended that "[i]n view of the amendments to the claims hereby, as well as the above arguments" the claims are "neither shown nor suggested in any of the cited references, alone or in combination." *Id.* at 1334. The examiner agreed in an immediately subsequent examiner interview,

2004).”); *State v. Kelly*, 204 S.W.3d 808, 821 (Tex. Crim. App. 2006) (“We further note that this same dictionary defines ‘acquiesce’ as, among other things, ‘[t]o consent or comply without protest.’ *Webster’s II New Collegiate Dictionary* 10 (1999).”); *Maung Ng We v. Merrill Lynch & Co.*, 99 Civ. 9687 (CSH), 2000 U.S. Dist. LEXIS 11660, at *23 (S.D.N.Y. Aug. 14, 2000) (“‘Acquiesce’ means to ‘give an implied consent to a transaction, to the accrual of a right, or to any act, by one's mere silence, or without express assent or acknowledgment.’ [Black’s Law Dictionary 24 (6th ed. 1990)].”)

indicating "that the amended claims 'appear to distinguish over art of record in prior case (FR 1,512,059 & B 942,459).'" *Id*. The examiner also rejected the amended claims based on a new prior-art reference. *Id*. In a child application, and "after the parent application had been rejected in view of the British patent," the *Desper* patentee amended the claims to include the "limitation that the channel signals be maintained separate and apart." The related application was then rejected on a reference other than the British patent. *Id*. "Thus, in the file history of both patents, the limitation that the channel signals be maintained separate and apart was added to overcome the prior art rejection based on the British reference, ***and in both cases it succeeded***." *Id*. (emphasis added). That is, the examiner never took a position contrary to the *Desper* patentee's position that the claims included a separate-and-apart limitation. Rather, the examiner indicated agreement with the patentee's position. That the examiner "shifted to a different focus does not blunt the impact of those remarks made to overcome the prior rejection." *Id*. at 1336.

*Desper* is distinguishable from the present circumstance in that the examiner here—rather than agreeing with patentee's prosecution claim-scope arguments regarding the operating system—explicitly rejected those claim-scope arguments. In *Desper*, there was no contrary position to which the *Desper* patentee could acquiesce. Here, the patentee was presented with a direct and explicit rejection of its operating-system argument and chose to give up on that argument—it acquiesced to the examiner's contrary position.

Ultimately, given the examiner's statement that "the claim language does not require the processor determining to be performed without regards to the operating system, i.e. via processor hardware only," the patentee's failure to amend the claims to exclude the operating system, the patentee's amendment of claims to add a different limitation, and the patentee's failure to protest the examiner's position on the scope of the claim language, it is sufficiently clear that the patentee

acquiesced to the examiner's position. A member of the public reading the prosecution history would see that the last statement on the operating-system argument was an explicit rejection of that argument by the agency tasked with examining the patent application. Thus, the public-notice function is served by giving effect to the patentee's acquiescence to the examiner's position that the claims do not exclude an operating system performing the processor determining functions.

Accordingly, the Court construes these terms as it did in *Huawei* and *Amazon.com*, as follows:

- "computer processor" means "CPU";

- "processor" means "CPU";

- "processing unit" means "computing portion of CPU"; and

- "processing device" means "computing portion of CPU."

**B.** **"reducing a magnitude of a difference" and "reducing the magnitude of the difference"**

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "reducing a magnitude of a difference"<br><br>• '247 Patent Claim 1 | reducing the absolute value of the difference | indefinite |
| "reducing the magnitude of the difference"[11]<br><br>• '247 Patent Claims 7, 8 | | |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

---

[11] In their P.R. 4-5(d) chart, the parties presented "reducing the magnitude of a difference" for construction. Dkt. No. 64-1 at 2. The Court does not find that term in the identified claims (1, 7, 8). The Court understands that the parties' arguments and proposed constructions of "reducing the magnitude of a difference" apply to "reducing the magnitude of the difference" in Claims 7 and 8.

### The Parties' Positions

Plaintiff submits: As held in *Huawei*, reducing a magnitude of a difference between an operating voltage and an allowable voltage or between an operating frequency and an allowable frequency means moving the operating voltage or frequency closer to the allowable voltage or frequency, regardless of whether that means increasing or decreasing the voltage or frequency.[12] Dkt. No. 58 at 8–9.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '061 Patent fig.2, col.5 l.15 – col.7 l.38. **Extrinsic evidence**: Carbonell Decl.[13] ¶¶ 72–76 (Plaintiff's Ex. E, Dkt. No. 58-6).

Defendants respond: The meanings of "reducing a magnitude of a difference" is not reasonably certain as it is not clear "what quantitative measure should be applied to the term 'magnitude'" nor is it clear what is means for a difference to be "reduced by a 'magnitude.'" Specifically, "reducing a magnitude of a difference" is a term of degree and the intrinsic record does not provide the requisite objective standard for measuring the degree. Plaintiff's proposed construction similarly fails. Dkt. No. 61 at 17–20.

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '247 Patent col.8 ll.2–24. **Extrinsic evidence**: Nazarian Decl. ¶ 50 (Defendants' Ex. D, Dkt. No. 61-4).

Plaintiff replies: In the context of the patent, a "magnitude of a difference" between two values objectively requires determining the difference between the two values, and "reducing a magnitude of a difference" means making the absolute value of that difference smaller. Dkt. No. 63 at 7–8.

---

[12] *Huawei*, 2017 U.S. Dist. LEXIS 108040, at *52–56.
[13] Declaration of Jaime G. Carbonell, Ph.D. Regarding Proposed Constructions and Definiteness of the Asserted Claims of U.S. Patent Nos. 7,100,061, 7,596,708, 8,566,627, and 8,806,247.

## Analysis

The issue in dispute is whether the meanings of these terms are reasonably certain. They are.

This is substantially the same dispute that was before the Court in *Huawei*. 2017 U.S. Dist. LEXIS 108040, at *52–56. The Court reiterates the *Huawei* ruling and reasoning and rejects Defendants' arguments that "reducing a magnitude of a difference" renders any claim indefinite. In the context of the claims, the terms mean that operating frequency is brought closer to the highest allowable frequency and that the voltage applied to the processing device is brought closer to the lowest allowable voltage level. That is, the reducing the "magnitude" of the difference requires raising the frequency or voltage when lower than the allowable frequency or voltage (which suggests a negative difference becomes less negative, even though making a negative number less negative is increasing the value of the number) and requires lowering the frequency or voltage when lower than the allowable frequency or voltage (which suggests a positive difference becomes less positive).

Accordingly, Defendants have not proven the "reducing a magnitude of a difference" or "reducing the magnitude of the difference" terms render any claim indefinite and construes the terms as follows.

- "reducing a magnitude of a difference" means "reducing the absolute value of the difference"; and

- "reducing the magnitude of the difference" means "reducing the absolute value of the difference."

### C.    "a counter"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "a counter"<br><br>• '627 Patent Claims 1, 10, 16 | plain and ordinary meaning | hardware or software that counts |

**The Parties' Positions**

Plaintiff submits: "Semcon IP Inc. has agreed to adopt and rest on the arguments made in the briefing and at the *Markman* hearing in *Semcon IP Inc. v. Amazon.com, Inc.* Case No. 2:18-cv-00192-JRG." Dkt. No. 64-1 at 5.

Defendants submit: "Defendants have agreed to adopt and rest on the arguments made in the briefing and at the *Markman* hearing in *Semcon IP Inc. v. Amazon.com, Inc.* Case No. 2:18-cv-00192-JRG. Defendants also adopt the Court's constructions of this term in that case, which the Court construed to mean 'hardware or software that counts." Dkt. No. 64-1 at 5.

**Analysis**

As the parties have expressly adopted and rested on the arguments made in the claim-construction proceeding in the Amazon.com case, the Court adopts and reiterates the *Amazon.com* ruling and reasoning. *Amazon.com*, 2019 U.S. Dist. LEXIS 79846, at *47–52.

Accordingly, the Court construes "counter" as follows:

• "counter" means "hardware or software that counts."

### D. The Changing-the-Voltage-While-Executing-Instructions Terms

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| • Dkt. No. 64-1 at 5–6 | plain and ordinary meaning | "executing … instructions" means "executing … instructions using the core clock"<br><br>"execution of … instructions" means "execution of … instructions using the core clock"<br><br>"execute instructions" means "execute instructions using the core clock"<br><br>"executes … instructions" means "executes … instructions using the core clock" |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**The Parties' Positions**

Plaintiff submits: "Semcon IP Inc. has agreed to adopt and rest on the arguments made in the briefing and at the *Markman* hearing in *Semcon IP Inc. v. Amazon.com, Inc.* Case No. 2:18-cv-00192-JRG." Dkt. No. 64-1 at 5–6.

Defendants submit: "Defendants have agreed to adopt and rest on the arguments made in the briefing and at the *Markman* hearing in *Semcon IP Inc. v. Amazon.com, Inc.* Case No. 2:18-cv-00192-JRG. Defendants also adopt the Court's constructions of these terms in that case.'" Dkt. No. 64-1 at 5–6.

<u>**Analysis**</u>

As the parties have expressly adopted and rested on the arguments made in the claim-construction proceeding in the *Amazon.com* case, the Court adopts and reiterates the *Amazon.com* ruling and reasoning. *Amazon.com*, 2019 U.S. Dist. LEXIS 79846, at *21–52

Accordingly, the Court construes these voltage-change terms by construing "executing instructions" and variants in those terms in the claims at issue as follows:

- "executing … instructions" means "executing … instructions using the core clock";

- "execution of … instructions" means "execution of … instructions using the core clock";

- "execute instructions" means "execute instructions using the core clock"; and

- "executes … instructions" means "executes … instructions using the core clock."

## V.     CONCLUSION

The Court adopts the constructions above for the disputed and agreed terms of the Asserted Patents. Furthermore, the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**SIGNED this 10th day of July, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE